## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Zhi Kai H. Vanderford,                                    Case No. 22-cv-971 (DSD/DJF)

                    Plaintiff,

v.                                               **REPORT AND RECOMMENDATION AND**
                                                              **ORDER**
Paul Schnell, et al.,

                    Defendants.

      This matter is before the Court on Defendants' Motion to Dismiss ("Motion") (ECF No. 25) Plaintiff's Amended Complaint (ECF No. 13). Plaintiff alleges First Amendment violations against Defendants, in their official capacities as officials for the Minnesota Department of Corrections ("DOC"), for refusing to display his artwork at an "Art from the Inside" art show, requiring him to mail that art out of the facility where he is incarcerated at his own expense, delaying his ability to send a piece of art to a charity show as it proceeded through the grievance process, and holding a piece of his art for destruction (*see generally* ECF No. 16). Defendants argue Plaintiff fails to state a claim for relief under Federal Rule of Civil Procedure 8(a), that his official capacity claims are barred by the Eleventh Amendment, and that he fails to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) as a matter of law (*see generally* ECF No. 26). Also before the Court are Plaintiff's Demand for Judgment (ECF No. 37) and Motion to Appoint Counsel (ECF No. 39). For the reasons given below, the Court recommends granting Defendant's Motion to Dismiss, denying Plaintiff's Demand for Judgment, and denying Plaintiff's Motion to Appoint Counsel.

## I.    Background

### A.    Procedural History

Plaintiff submitted a large number of filings related to Defendants' Motion.  They include: the Original Complaint (ECF No. 1) filed April 15, 2022 with 29 pages of attached exhibits (ECF No. 1-1); an Amended Complaint filed August 1, 2022 (ECF No. 16) with an attached cover letter (ECF No. 16-1); a self-styled Answer to a More Definite Statement (ECF No. 32); a brief entitled Plaintiff's Memorandum (ECF No. 33), which the Court construes as Plaintiff's response to Defendants' Motion; 29-pages of new exhibits to Plaintiff's Memorandum (ECF No. 34); 6-pages of additional exhibits (ECF No. 36); and another exhibit (ECF No. 40), purportedly related to his Motion to Appoint Counsel, but which appears to constitute factual material substantively related to the claims in the Amended Complaint.

Before the Court may evaluate Defendants' motion, it must first address which of these documents are properly before the Court and which are not.  First, the parties agree, and the Court finds, that the Amended Complaint (ECF No. 16) is the operative pleading in this case.  *See* Fed. R. Civ. P. 15(a)(1)(B); (ECF No. 16-1); (ECF No. 26 at 2-3 n.1).  The Original Complaint is thus superseded, and the Court constrains its analysis to the Amended Complaint.  Second, although Plaintiff attached exhibits to the Original Complaint (ECF No. 1-1) and did not reattach them to the Amended Complaint, Plaintiff plainly intended the exhibits to be considered as attachments to the Amended Complaint.  (*See* ECF No. 16-1, "I don't know what motion to make for help, so I just amended the complaint … all the exhibits are the same.")  Moreover, as Defendants acknowledge, the exhibits attached to the Original Complaint are cited within the Amended Complaint.  (ECF No. 26 at 3 n.3.)  The Court accordingly finds the exhibits (ECF No. 1-1) necessarily are embraced by the Amended Complaint and takes them into consideration as if

Plaintiff had filed them as attachments to it.[1]  *See Pourous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (providing that a court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6)).  Third, the Court considers Plaintiff's Memorandum (ECF No. 33), to the extent it addresses legal claims raised in his Amended Complaint, to be a permissible response to Defendant's Motion to Dismiss.  The Court notes, however, to the extent Plaintiff seeks to raise entirely new legal claims in his Memorandum that are not clearly pled in his Amended Complaint (*see, e.g.,* ECF No. 33 at 1-2 ¶¶ 4-6, alleging due process violations based on the confiscation of *incoming* as opposed to *outgoing* mail),[2] those arguments are not properly before the Court and are excluded from consideration. *See, e.g.*, *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (stating "a complaint may not be amended by the briefs in opposition to a motion to dismiss") (internal quotation marks omitted); *Bohner v. LHR, Inc.*, 10-cv-4621 (DWF/LIB), 2012 WL 6755275, at *8 (D. Minn. Dec. 10, 2012) ("A memorandum is not the appropriate place to attempt to amend a pleading to raise a new claim.") (internal quotation marks omitted), *report and recommendation adopted*, 2013 WL 25073 (Jan. 2, 2013).

The remaining documents—Plaintiffs' Answer to a More Definite Statement (ECF No. 32), the exhibits to Plaintiff's Memorandum (ECF No. 34), and the additional exhibits (ECF Nos. 36 and 40)—all seek to inject new factual information into the case that is improper for

---

[1] For clarity, the Court cites to the exhibits based on the ECF document and page number rather than the using Plaintiff's identified exhibit numbers.

[2] Indeed, the Amended Complaint is predicated at least in part on the notion that *outgoing* mail—including Plaintiff's artwork—should not be subject to the same restrictions as *incoming* mail.  (*See* ECF No. 16 at 3 ¶ 12, "The DOC is twisting an INCOMING sexual materials case to justify destroying my property.")

consideration on a Motion to Dismiss.  *See Pourous Media* 186 F.3d at 1079; *cf. Wattleton v. Simon*, 16-cv-2707 (JNE/SER), 2017 WL 3447127, at *3 (D. Minn. July 14, 2017) ("Wattleton's attempt to incorporate new allegations in his Complaint by way of his Reply to Defendants' Motion for Summary Judgment is procedurally improper….".) (citations omitted), *report and recommendation adopted*, 2017 WL 3446773 (D. Minn. Aug. 10, 2017).  The Court accordingly excludes them from its review in connection with Defendant's Motion.[3]

B.    **Summary of the Amended Complaint**

Plaintiff is a transgender male who is presently incarcerated under a life sentence at the Minnesota Correctional Facility – Shakopee.  (ECF No. 16 at 1.)   In 2021, an organization called "Art from the Inside" ("AFTI") advertised an opportunity for inmates at the facility to display up to two pieces of original artwork at one or more art exhibitions and offer them for purchase.  (ECF No. 1-1 at 2.)  The advertisement for the ATFI program stated that, although the artwork could not be returned to the inmates, "[a]fter exhibitions are completed, any unsold art will be shipped to an address provided by the artist.  Art from the Inside will cover the cost of shipping."  (ECF No. 1-1 at 4.)

Plaintiff submitted three pieces of artwork to the program:   a piece entitled "Who Decides?", another piece entitled "Love is Blind," and a third piece entitled "Love is Blind Prison Maze," which was attached to "Love is Blind."  (*Id.*)  The DOC received these submissions but declined to release them to ATFI on a variety of grounds.  The DOC determined that "Who

---

[3] To the extent Plaintiff proffers the exhibit at ECF No. 40 as support for his Motion to Appoint Counsel, the Court cannot discern any relevance to that motion.  The exhibit consists of a letter arguing Defendants' mailroom improperly rejected certain incoming mail to Plaintiff.  It is unclear how the existence of any such practice purportedly supports Plaintiff's request for legal representation in this case, particularly since the Amended Complaint does not assert claims based on the rejection of incoming mail.

Decides?" contained "HIPAA violations and misrepresentation", "Love is Blind" contained contraband in violation of DOC policy 301.030, and "Love is Blind Prison Maze" could not be sent out because it was attached to "Love is Blind" and could not be separated from it. (*Id.*) The DOC informed Plaintiff in a memo dated July 15, 2021 that, instead of sending these items to ATFI for possible exhibition, it would dispose of them. (*Id.*) Ultimately, the DOC did not destroy "Who Decides?" and Plaintiff was permitted to mail it out to an address of his choosing at his own expense of approximately $35. (ECF No. 16 at 2 ¶ 8; ECF No. 1-1 at 22.) The record regarding whether the DOC has destroyed "Love is Blind" and "Love is Blind Prison Maze" or is still holding them pending the outcome of this litigation is not clear. (*See* ECF No. 1-1 at 23, Plaintiff's request that the pieces be held for litigation purposes and DOC officer's response: "I am aware of the appeal. I'll follow the policy and the directive given to me by the administration."; *see also* ECF No. 16 at 2 ¶ 8, stating Plaintiff's concern that, "[w]hile asking that [his] art be held for litigation … it will be damaged or destroyed.")

None of the pieces Plaintiff submitted to the AFTI program has been submitted for the Court's review, but assuming the facts as Plaintiff alleges them to be true as the Court must in resolving a motion to dismiss, "Who Decides?" is an opinion piece regarding the prison's treatment of an 88-year-old, unnamed inmate who had a stroke in prison. (ECF No. 16 ¶ 5; *see also* ECF No. 1-1 at 21.) Plaintiff filed a grievance on August 10, 2021 stating that he received the inmate's consent and support to submit the piece and obtained a notarized statement from her (*see* ECF No. 16 at 2 ¶ 5; ECF No. 1-1 at 9; *see also* ECF No. 1-1 at 21, administrative appeal filed October 12, 2021). Prison officials responded to the grievance, stating, "Incarcerated persons cannot get permission from other incarcerated people regarding medical information." (ECF No. 1-1 at 9; *see also* ECF No. 1-1 at 6, July 19, 2021 offender kite form and response stating that such

permission cannot be obtained by offenders because "[w]e don't know if it is being extorted, threatened, etc."; ECF No. 1-1 at 8, response to July 21, 2021 kite, stating, "The information provided on your artwork was specific enough to be able to easily identify one of the individuals you talked to.")

The Amended Complaint and attached exhibits contain no allegations describing the content of "Love is Blind", but in Plaintiff's Memorandum he asserts that "Love is Blind" is "a drawing of a flower, the stamen consists of nude, sexual couplings of every variation. There is a self-portrait of a butterfly that has breasts and a penis, which represents the plaintiff [a transformation with testosterone but prior to upper gender-conforming surgery]." (ECF No. 33 at 3; *see also* ECF No. 33 at 6, "Plaintiff's art may evoke lust or shame for different individuals. … Plaintiff's candid depiction of coital couplings are societal options.") Plaintiff notes that his "'Love is Blind' artwork is not for display within a MN DOC facility." (ECF No. 16 ¶ 11.)

In addition to these pieces, Plaintiff alleges he worked on an unnamed piece for AFTI consisting of figurines made with modeling clay obtained through an AFTI program stipend. (ECF No. 16 at 2 ¶ 4.) He ran out of clay, however, and substituted soap to finish them. (*Id.*) Prison officials confiscated the project because Plaintiff had used soap for a purpose other than intended and sent Plaintiff to a disciplinary hearing. (*Id.*)

Plaintiff asserts another claim with respect to an unnamed piece of art created for a charity event called the White Snake Projects Virtual Art Exhibition. (*See* ECF No. 16 ¶ 7; ECF No. 1-1 at 15–20.) The DOC confiscated the piece on grounds that it contained "sexually explicit material/ nude photos/pictures/drawings." (ECF No. 1-1 at 18.) Officials ultimately permitted Plaintiff to mail this piece, but only after the charity event was finished. (ECF No. 16 ¶ 7.)

Plaintiff also generally alleges he is having problems getting his mail sent out under his current legal name, Zhi Kai. (ECF No. 16 ¶ 6; ECF No. 1-1 at 10–12, Minnesota state court order granting Plaintiff's request for a legal name change.) He attaches a statement he says he received with his outgoing mail being returned, which provides that while incoming mail may be sent to a "department-recognized legal name," outgoing mail "must be addressed from the offender's commitment name and [offender identification number] only". (ECF No. 1-1 at 14.) The significance of these allegations is unclear, since the Amended Complaint does not seek a court order requiring that he be permitted to send outgoing mail under his new legal name. (*See* ECF No. 16 at 5-7.)

Plaintiff's legal argument focuses on the prison's restriction against him mailing out sexually explicit materials, which he alleges is art containing nudity on a par with the Venus de Milo or the statue of David. (*Id.* at 10-11.) He asserts the DOC's conduct has violated and is continuing to violate his free speech and due process rights under the First and Fourteenth Amendments to the United States Constitution. (*See id.* ¶¶ 10–29.) He seeks relief against Defendants in their official capacities only (*id.* at 1), and requests: "summary judgment" that Defendants violated his free speech and due process rights under "the U.S. Constitution and MN laws of the United States" (*id.* at 30); "specific performance that [his] art be sent out to the recipient of his choosing at DOC expense" (*id.* ¶ 31); reimbursement of the $35 dollars he previously paid to mail his art (*id.* ¶ 32); reimbursement of his costs incurred in filing this lawsuit (*id.* ¶ 33); appointment of counsel (*id.* ¶ 34); and any other relief the Court deems just and equitable (*id.* ¶ 35).

## II.    Defendant's Motion to Dismiss

### A.    Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court must assume all facts in the complaint to be true and construe all inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, the court need not accept as true conclusory allegations, *Haten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Wescott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Though Rule 8(a)(2) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Id*. (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity to "raise a right to relief above the speculative level." *Id*. at 555.

Documents filed *pro se* are "to be liberally construed," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers." *Id.* (internal quotations omitted); *see also* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). Although *pro se* complaints must be construed liberally, such complaints still must allege sufficient facts to state a claim as a matter of law. *See Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

**B.    Legal Analysis**

Defendants argue all of Plaintiff's claims are barred under the Eleventh Amendment, Plaintiff fails to the pleading requirements of Rule 8(a), and Plaintiff fails to state a claim for relief under Rule 12(b)(6) as a matter of law. Defendants also argue that, to the extent Plaintiff raises state law claims, the Court should decline to exercise supplemental jurisdiction. For the reasons given below, the Court recommends dismissing Plaintiff's claims in their entirety.

**1.    Eleventh Amendment Immunity**

In section 1983 actions such as Plaintiff's, public officials "may be sued … in either their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir.1997)). The Eighth Circuit has held that "in order to sue a public official in his or his individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or his official capacity." *Id.* Plaintiff explicitly sues each Defendant only in his or her official capacity acting under color of state law (ECF No. 16 at 1).

Because this is an official capacity suit, the Eleventh Amendment bars Plaintiff's claims to the extent he seeks damages for Defendants' past conduct. Unless waived, "[t]he Eleventh Amendment grants a state immunity from suits brought in federal court by its own citizens as well as citizens of another state." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 (8th Cir. 1999) (citing *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)); *see also Klinger v. Director, Dept. of*

*Revenue*, 281 F.3d 776, 777 (8th Cir. 2002) (holding that the Eleventh Amendment bars federal suits against state officials for monetary damages). The "Minnesota Department of Corrections is immune from suit under the Eleventh Amendment." *See, e.g.*, *Otto v. Schmitt*, 21-cv-1610 (PAM/ECW), 2021 WL 4973718, at *1 (D. Minn. Oct. 26, 2021). And critically, "a suit against a public employee in his or his official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535 (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Here, there has been no suggestion of any waiver of immunity. Plaintiff's suit is therefore subject to the Eleventh Amendment's prohibitions.

In *Ex Parte Young*, 209 U.S. 123, 155–56 (1908), however, the Supreme Court recognized an exception to state immunity from suit, holding that a party may sue a state official in his or her official capacity to seek prospective injunctive relief so long as the official has "some connection with the enforcement of the act." *Id.* at 209 U.S. at 157; *see also Klinger*, 281 F.3d at 777 (holding plaintiffs could seek prospective declaratory and injunctive relief under the exception carved out in *Ex Parte Young*). "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal citation and quotation omitted).

With respect to Plaintiff's "Who Decides?" art piece for AFTI and the piece intended for the White Snake Projects Virtual Art Exhibition, the Court construes the Amended Complaint to assert a claim for a declaratory judgment that the DOC violated his constitutional rights by withholding permission to submit the pieces in time for the exhibitions. Plaintiff also seeks monetary damages in the amount of $35 for his cost to mail "Who Decides?" to a recipient outside

the facility.  Plaintiff specifically asserts that the DOC is required to cover this cost because the advertisement from AFTI promised to ship any unsold art at its expense after the exhibitions were completed.  (*See, e.g.,* ECF No. 16 at 2 ¶ 8.)  Because neither of these claims seeks prospective relief, the Court concludes they fall outside the *Ex Parte Young* exception and are barred under the Eleventh Amendment.

### 2.    Rule 8 Pleading Sufficiency

Portions of Plaintiff's Amended Complaint are also deficient under the pleading standards set forth under Rule 8(a)(2) as articulated under *Twombly*, 550 U.S. at 555, and *Iqbal*, 556 U.S. at 678.  Even construing the Amended Complaint liberally, it is unclear whether Plaintiff seeks to bring legal claims based on the confiscation of the figurines he made from soap for AFTI, or the difficulty he is having getting mail sent out under his current legal name.[4]  Because the Amended Complaint includes no legal basis for any such claims, and indeed, it is not even clear whether Plaintiff intends to bring them at all, the Court concludes that—to the extent Plaintiff asserts them—he has failed to provide "a short and plain statement of the claim showing that [he] is entitled to relief" as Rule 8(a)(2) requires.

### 3.    Failure to State a Claim Under Rule 12(b)(6)

Plaintiff's remaining claims include his request for an injunction requiring that his art pieces—presumably "Love is Blind" and "Love is Blind Prison Maze"—be sent to a recipient of his choosing at DOC expense.  The Court further liberally construes the Amended Complaint as asserting a claim for declaratory relief finding the DOC's policy against mailing out sexually explicit materials is unconstitutional.  These claims seek prospective relief, and the Court finds

---

[4] Although the Court finds Plaintiff has not adequately pled a claim with respect to this allegation, it questions whether the DOC could have any significant penological interest in refusing to send out mail under inmates' legal names.

they fall within the exception recognized in *Ex Parte Young*. Although the Eleventh Amendment does not bar these claims, upon careful review of the record the Court concludes they should not survive Defendants' challenge under Rule 12(b)(6).

That Plaintiff retains constitutional rights notwithstanding his incarceration—including his rights to free speech and due process—is beyond dispute. (*See* ECF No. 26 at 13, quoting *Thongvanh v. Thalacker*, 17 F.3d 256, 259 (8th Cir. 1994).) But the State permissibly may limit those rights in light of the needs of the penal system. *See Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004). "Constitutional claims that would otherwise receive strict scrutiny analysis if raised by a member of the general population are evaluated under a lesser standard of scrutiny in the context of a prison setting." *Id.*

"When a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). "The Supreme Court has articulated a two-step, four-factor test to determine when a regulation that impinges on an inmate's constitutional rights is 'reasonably related to legitimate penological interests.'" *Sisney v. Kaemingk*, 15 F.4th 1181, 1190 (8th Cir. 2021), *cert. denied*, 212 L. Ed. 2d 544, 142 S. Ct. 1454 (2022) (quoting *Turner*, 482 U.S. at 79). The first factor is a threshold condition the regulation must satisfy to pass constitutional muster. *Id.* (citation omitted). If the regulation passes that first threshold requirement, then the court must determine the regulation's constitutionality by balancing the three remaining factors. *Id.* (citation omitted).

The first, threshold requirement is that "there must be a valid rational connection between the prison regulation and the legitimate government interest put forward to justify it." *Turner*, 482 U.S. at 89 (internal quotation and citation omitted). "When the regulation in question 'restrict[s]

inmates' First Amendment rights, then it must also 'operate[] in a neutral fashion' to further this interest." *Sisney*, 15 F.4th at 1190 (quoting *Turner*, 482 U.S. at 90). Second, the court must consider "whether there are alternative means of exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90. Third, the court must evaluate the impact that accommodating the asserted constitutional right will have on guards, other inmates, and the allocation of prison resources. *Id.* (quoting *Turner*, 482 U.S. at 90). Fourth, "the absence of ready alternatives [to the regulation] is evidence of the reasonableness of a prison regulation." *Id.* (quoting *Turner*, 484 U.S. at 90). But the existence of obvious easy alternatives may be evidence that the regulation is unreasonable. *Id.* (quoting *Turner*, 484 U.S. at 90).

Plaintiff seeks an injunction requiring that his art pieces be sent to a recipient of his choosing at DOC expense. The Court construes this request as a challenge to the constitutionality of the DOC's policy against sexually explicit materials as it is applied to him. In addressing such challenges, the Eighth Circuit and previous decisions in this District have held prison regulations banning sexually explicit materials satisfy *Turner's* threshold requirement. *See Sisney*, 15 F.4th at 1192; *Hodgson v. Fabian*, 378 F. App'x. 592, 594 (8th Cir. 2010); *Smith v. Fabian*, No. 10-cv-2193 (JRT/TNL), 2012 WL 1004982 at *5-6 (D. Minn. March 26, 2012). Significantly, the court in *Smith* upheld DOC Contraband Policy 301.030—the same policy that is at issue here—on a constitutional challenge to the policy's ban against sexually explicit materials. *Id.* at *5; (*see* ECF No. 1-1 at 4; ECF No. 1-1 at 19). The court determined that the presence of sexually explicit material in a prison environment interferes with security and sex offender rehabilitation, among other reasons, such that keeping the materials away from sex offenders is a legitimate penological interest. *Smith*, 2012 WL 1004982 at *5. The Court finds it is common sense that the same interests apply here. *See Sisney*, 15 F.4th at 1192 ("Courts have routinely held that there is a

rational connection between censoring pornography and promoting legitimate penological interests.").

With respect to whether the DOC acted improperly in seizing Plaintiff's art pieces in particular, the Eighth Circuit's decision in *Sisney* is instructive. The court in *Sisney* addressed the application of South Dakota prison policy to a book titled *Matisse, Picasso and Modern Art in Paris* and nine pictures of Renaissance artwork. *Id.* at 1193. The court upheld the plaintiff's as-applied challenge in that case, noting, "Although a few of the featured works include[d] nudity," the defendants could not identify any piece of artwork that "arguably depicts its subject lewdly or as engaged in any actual or simulated sexual act." *Id.* (internal quotations omitted). Here, Plaintiff acknowledges that—in stark contrast with the artworks at issue in *Sisney*—his "Love is Blind" piece depicts "nude, sexual couplings of every variation." (ECF No. 33 at 3.) Plaintiff further suggests this piece has the potential to affect other inmates in ways that would inhibit some inmates' rehabilitation, admitting that his "art may evoke lust or shame for different individuals lacking solid fortitude in their own sexuality." (ECF No. 33 at 6.) Thus—unlike the ban against the fine art photos at issue in *Sisney*—the DOC's prohibition against the artwork at issue here falls squarely within and is rationally related to the DOC's penological goals. The Court recommends rejecting Plaintiff's as-applied challenge to the Contraband Policy and dismissing Plaintiff's claims for prospective and injunctive relief on these grounds.

To the extent Plaintiff seeks a general declaration that the Contraband Policy is unconstitutional, he brings a facial challenge to that regulation. For the above-stated reasons, the Court finds the policy is reasonably related to the DOC's legitimate penological interests. The Court further finds the policy at issue here to be content-neutral. (*See* ECF No. 1-1 at 19, defining "Contraband" to include "Published or unpublished sexually explicit materials that contain

14

depictions … of prohibited content including such examples as …[s]exual intercourse (including vaginal, oral, anal or bestiality).").  The Contraband Policy does not ban only those materials depicting people who identify as transgender such as Plaintiff, or those with any other gender or sexual identity.  It bans all materials depicting sexual intercourse.

Second, the Court finds the Contraband Policy permits alternative means for prisoners to exercise their First Amendment rights.  The *Turner* test applies to both incoming and outgoing mail.  *See, e.g.*, *Thongvanh*, 17 F.3d at 259.  In the context of incoming mail, "[t]he Supreme Court has held that the second [*Turner*] factor weighs in favor of the constitutionality of a prison's regulation … if the regulation 'permit[s] a broad range of publications to be sent, received, and read.'"  *Sisney*, 15 F.4th at 1191 (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 417–18 (1989)). The Contraband Policy does not prohibit Plaintiff from receiving or sending other materials expressing his views regarding his transition, sexuality or gender expression—only those materials that are sexually explicit.

The third factor—the impact that accommodating the asserted right will have on guards, inmates, and the allocation of prison resources—also supports upholding a facial challenge to the Contraband Policy.  "This factor weighs in favor of the constitutionality of any regulation censoring material that would inhibit some inmates' rehabilitation and that 'would likely be disseminated throughout the prison.'"  *Id.*  Plaintiff argues that outgoing mail such as that at issue here "presents less concerns about security and preventing unwanted materials from circulating among incarcerated individuals." (ECF No. 33 at 2.)  But allowing prisoners to create prohibited contraband in the first place puts it within the facility during its creation and prior to mailing, and thus presents the same concerns.

With respect to the fourth factor, the Court finds no easy alternatives to the DOC's Contraband Policy, which courts have now upheld for years. The DOC cannot create a workable policy limiting the possession of sexually explicit materials to only those inmates for whom they would not be harmful, since creating such a policy would overburden prison staff required to track who can have them and enforce it unequally, and the risk would remain that the materials will be distributed notwithstanding. *See Amatel v. Reno*, 156 F.3d 192, 201 (D.C. Cir. 1998) ("Even if pornography could be directed only to those not likely to be adversely affected, it could find its way to others, interfering with their rehabilitation and increasing threats to safety."); *Sisney*, 15 F.4th at 1193 (holding that "alternatives such as page-by-page censorship and monitored reading rooms are not 'obvious, easy alternatives.'") (*quoting Thornburgh*, 490 U.S. at 418–19).

For all of these reasons the Court concludes that the DOC's Contraband Policy meets the *Turner* test. To the extent Plaintiff seeks a general declaratory judgment finding the Contraband Policy unconstitutional, the Court recommends this claim be dismissed. Because the Court recommends that all of Plaintiff's federal claims be dismissed for all of the above reasons, the Court declines to exercise supplemental jurisdiction over any parallel state law claims asserted in the Amended Complaint and recommends those claims be dismissed as well.

### III.   Plaintiff's Demand for Judgment

This matter is also before the Court on Plaintiff's "Demand for Judgment" pursuant to Rule 8.01 of the Minnesota Rules of Civil Procedure. (ECF No. 37.) Minnesota Rule 8.01 is the Minnesota state law analogue to Federal Rule of Civil Procedure 8, which defines pleading standards in federal court. *Compare* Minn. R. Civ. P. 8.01 *with* Fed. R. Civ. P. 8. Plaintiff's Demand for Judgment merely reiterates Plaintiff's request that his artwork be mailed out at DOC expense. (ECF No. 37.) Plaintiff's attempted use of state procedural rules in this federal case is

improper, and his request should be denied in any event for the above-stated reasons addressing his demand for the same relief.   The Court accordingly recommends that this motion be denied.

## IV.    Plaintiff's Motion for Appointment of Counsel

The Court also considers Plaintiff's "Motion to Appoint Counsel" (ECF No. 39).  Although Plaintiff titles this document as a motion for appointment of counsel, it largely reiterates claims asserted in his Amended Complaint, which the Court has already addressed.  (ECF No. 39.)

To the extent Plaintiff seeks appointment of counsel, the Court notes that it previously denied Plaintiff's motion for the same relief and finds no compelling reason to rule differently now.  (ECF No. 21.)  There is no constitutional or statutory right to appointed counsel in civil cases.  *Ward*, 721 F.3d at 942.   Rather, the appointment of counsel is a matter of the Court's discretion.  *McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997); *Mosby v. Mabry*, 697 F.2d 213, 214 (8th Cir. 1982).  Factors to consider in deciding whether to appoint counsel include: "(1) the factual complexity of the issues; (2) the ability of the indigent person to investigate the facts; (3) the existence of conflicting testimony; (4) the ability [of the] indigent person to present the claims; and (5) the complexity of the legal arguments." *Crozier v. Westside Cmty. Sch. Dist.*, 973 F.3d 882, 889 (8th Cir. 2020) (citing cases).

The Court recognizes Plaintiff's strong desire for appointment of counsel.  Nonetheless, the Court cannot conclude that litigating this action is factually or legally complex, or that Plaintiff lacks the ability to investigate the facts or present his arguments to the Court.  Moreover, Plaintiff's relative lack of understanding of the legal system and lack of access to assistance are not, alone, sufficient to warrant the appointment of counsel as these facts do not distinguish his case from the myriad other claims brought by *pro se* litigants. The Court denies Plaintiff's motion on these grounds.

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Plaintiff's Motion for the Appointment of Counsel (ECF No. [39]) is **DENIED**.

**RECOMMENDATION**

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.  Defendants' Motion to Dismiss (ECF No. [25]) be **GRANTED**;

2.  Plaintiff's Motion for A Demand Judgment (ECF No. [37]) be **DENIED**; and

3.  This action be **DISMISSED WITH PREJUDICE**.

Dated: July 12, 2023                    *s/ Dulce J. Foster*
                                        Dulce J. Foster
                                        United States Magistrate Judge

18